UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
JAMES T. WARD,                      )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
                                    )   Civil Action No. 13-cv-12054
MICHAEL G. BELLOTTI, P.J. COLETTA,  )
FRED CANNIFF, GEORGE GREEN,         )
MARY KELLY, PETER COLANTUONI,       )
PAUL GILL, ROCCO BRUNO and          )
DANIELLE BROMHOWER,                 )
                                    )
            Defendants.             )
                                    )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                              September 15, 2014

### I.  Introduction

Plaintiff James T. Ward ("Ward") has filed this lawsuit against Defendants Michael T. Bellotti, P.J. Coletta, Fred Canniff, George Green, Mary Kelly, Peter Colantuoni, Paul Gill, Rocco Bruno and Danielle Bromhower ("Defendants") alleging violations of 42 U.S.C. § 1983, gross negligence, conspiracy and intentional infliction of emotional distress. Compl., D. 4-1. The Defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). D. 7. For the reasons stated below, the motion is ALLOWED in part and DENIED in part.

### II.  Factual Background and Procedural History

The Court accepts the following non-conclusory allegations drawn from Ward's complaint as true for the purpose of resolving this motion and draws all reasonable inferences in

Ward's favor. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Ward is an inmate incarcerated by the State of Connecticut. D. 4-1 ¶ 1. The Defendants are employees of the Norfolk County Sheriff's Office. Id. ¶ 2. Ward's claims arise from the Defendants' alleged failure to notify him of his rights pursuant to the Interstate Agreement on Detainers ("IAD"). Article III(c) of the IAD, codified at Mass. Gen. L. 276 App. § 1-1, provides that "[t]he warden, commissioner of correction or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based." If Ward had been so notified pursuant to subsection (c), he claims he would have availed himself of the rights bestowed by subsection (a):

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for final disposition to be made of the indictment, information or complaint . . . .

Id. Art. III(a).

On August 30, 2005, Ward was sentenced to two and half years at the Norfolk County Sheriff's Office Correctional Center ("NCSOCC"). D. 4-1 ¶ 3. On September 14, 2006, Ward was transferred to the Suffolk County House of Correction ("SCHOC") to serve his sentence. Id. ¶ 4. On February 8, 2007, the State of Connecticut issued a warrant for Ward's arrest and the Connecticut State Police lodged a detainer. Id. ¶ 5. On March 5, 2007, Ward was transferred back to the NCSOCC. Id. ¶ 7. Ward alleges he first learned of the warrant from defendant Kelly at that time, and he attempted, unsuccessfully, to obtain more information about it and the IAD.

Id. ¶¶ 8-22. According to Ward, not until August 10, 2007 did he receive a copy of the warrant, and at no time was he advised of his rights under the IAD. Id. ¶¶ 24, 27.

On August 17, 2007, Ward completed his Massachusetts sentence and was transferred to Dedham District Court to answer the fugitive from justice warrant emanating from the Connecticut case. Id. ¶ 26. Defendant Colantuoni allegedly testified in the Connecticut matter on September 26, 2009 that Ward was not advised of his IAD rights. Id. ¶¶ 29-30. Ward alleges that on September 28, 2009, a Connecticut Superior Court judge found that NCSOCC authorities violated the IAD by failing to notify Ward of his IAD right to make a request for final disposition of the charges on which the Connecticut detainer was based. Id. ¶ 31.

Ward filed the instant matter in Norfolk Superior Court. D. 4-1. Ward contends that he mailed the complaint on April 11, 2012. Pl. Reply, D. 10 at 7. The Norfolk Superior Court docket entry, however, is dated February 7, 2013. D. 4 at 3. Nothing in the record explains the reason for this gap in time.

Ward's complaint contains four causes of action: gross negligence, conspiracy, intentional infliction of emotional distress, and "civil rights violations." D. 4-1 ¶¶ 52-78. The Court interprets the "civil rights violations" to be a claim under 42 U.S.C. § 1983. At bottom, Ward avers that, had he been informed of his rights under the IAD, he would have sought to serve his remaining Massachusetts sentence concurrently with his Connecticut sentence. Id. ¶ 74. As a result, he asserts that he had to serve 172 additional days in prison. Id. ¶ 75. The Defendants removed to federal court based on Ward's federal civil rights claim. D. 1.

The Defendants now move to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). They argue that Ward's claims are barred by a three-year statute of limitations and

that the Defendants are immune from Ward's negligence claim under the Massachusetts Tort Claims Act ("MTCA"). Def. Mem., D. 8 at 6-8.

## III. Standard of Review

The Court will dismiss a complaint that fails to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A plausible claim need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). A claim must contain sufficient factual matter that, accepted as true, allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[i]n determining whether a [pleading] crosses the plausibility threshold, the reviewing court [must] draw on its judicial experience and common sense. . . . This context-specific inquiry does not demand a high degree of factual specificity." García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (internal citations and quotation marks omitted).

The Court notes that Ward is *pro se*. "[T]he fact that the plaintiff filed the complaint *pro se* militates in favor of a liberal reading" of his allegations. Rodi v. S. New England Sch. of Law, 389 F.3d 5, 13 (1st Cir. 2004). The Court's task is not to determine if Ward will ultimately prevail, but whether he is entitled to undertake discovery in furtherance of his claims. Id. "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v.

4

Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997). The Court is "required to construe liberally a *pro se* complaint and [dismissal is warranted] only if a plaintiff cannot prove any set of facts entitling him or her to relief." Id.

IV. **Discussion**

   A. **Statute of Limitations**

Ward alleges that he discovered the purported IAD violations on September 25, 2009.[1] D. 4-1 ¶ 72. Ward's § 1983 claim is subject to a three-year statute of limitations. Nieves v. McSweeney, 241 F.3d 46, 52-53 (1st Cir. 2001) (federal civil rights cases filed in Massachusetts are subject to a three-year statute of limitations). Ward's pendent state tort claims are also subject to a three-year statute of limitations. Mass. Gen. L. c. 260, § 2A (tort claims in Massachusetts must be "commenced only within three years next after the cause of action accrues"). The Defendants argue that this suit had to have been filed by September 26, 2012. D. 8 at 7-8. Relying on the docket date of February 7, 2013, the Defendants argue that Ward missed the filing deadline by more than four months. Id. at 3, 7. Ward responds that his complaint was deemed filed when he mailed it from prison on April 11, 2012 because of the prison "mailbox rule." D. 10 at 7-8.

The prison mailbox rule provides that a *pro se* prisoner's pleadings are deemed filed on the date on which they are submitted to prison authorities for mailing to the court with which they are to be filed. Houston v. Lack, 487 U.S. 266, 270-76 (1988). Ward is correct that the mailbox rule applies to his § 1983 claim. The First Circuit has held that the mailbox rule governs a prisoner's § 1983 filing date. Casanova v. Dubois, 304 F.3d 75, 79 (1st Cir. 2002)

---

[1] Ward also alleges that an "[a]lternative date for discovery may be when Plaintiff's defense counsel filed Motion to Dismiss Connecticut charges on 8/20/2009." D. 4-1 ¶ 72. Construing the complaint's allegations liberally in Ward's favor, the Court credits the later date for purposes of this motion.

(stating that "the filing date for purposes of assessing compliance with the statute of limitations will be the date on which the prisoner commits the mail to the custody of prison authorities"). The court in Casanova relied on Houston to explain the policy underpinning this rule: a prisoner has no control over how or when a complaint is filed after he hands it over to prison officials. Id. The court noted that prison procedures for tracking the flow of mail should eliminate disputes as to the exact mailing date of a complaint. Id. Applying the mailbox rule to Ward's § 1983 claim, he may avail himself for the purposes of opposing the motion to dismiss of the alleged mailing date of April 11, 2012. If he produces unrebutted evidence to support that date, then he filed his federal claim prior to the expiration of the statute of limitations.

It is not clear whether the mailbox rule applies to Ward's state law tort claims for negligence, conspiracy and intentional infliction of emotional distress. Although Massachusetts has adopted Houston in the context of appellate actions, Massachusetts appellate courts have not addressed whether the mailbox rule applies to civil complaints. Commonwealth v. Hartsgrove, 407 Mass. 441, 445-46 (1990) (adopting prison mailbox rule for inmate's filing of *pro se* notice of appeal); see Jackson v. Comm'r of Corr., No. 13-P-471, 2014 WL 257799, at *1 (Mass. App. Ct. Jan. 24, 2014) (declining to address whether prison mailbox rule applies to *certiorari* filings); Felt v. Comm'r of Corr., No. 08-P-1245, 2009 WL 1650066, at *2 n.2 (Mass. App. 2009) (declining to address whether prison mailbox rule extends to civil cases). The Superior Court, however has indicated that the mailbox rule applies to civil complaints. Haas v. Spencer, No. WOCV201101399, 2012 WL 7017165, at *9 (Mass. Super. Dec. 11, 2012) (holding that "the prisoner mailbox rule should apply to all complaints"); Anderson v. Dennehy, No. 07-1801-C, 2008 WL 2736749, at *4 (Mass. Super. June 12, 2008) (applying mailbox rule to *certiori* complaint); but see Tibbs v. Dipalo, No. CA991509, 2000 WL 1273854, at *3 (Mass. Super.

Mar. 21, 2000) (declining to apply mailbox rule to *certiori* complaints). Moreover, another session of this Court has extended the mailbox rule to motions for new trial filed with a Massachusetts trial court. Powell v. Gelb, No. 13-11465-NMG, 2014 WL 1056982, at *2 (D. Mass. Mar. 13, 2014). The Court finds the rulings applying the mailbox rule more persuasive and, therefore, applies the rule to Ward's pendent tort claims. Accepting Ward's allegations as true that he filed the complaint when he mailed it from prison on April 11, 2012 i.e., before the expiration of the statute of limitations on September 26, 2012, the Court will not dismiss the pendent tort claims on statute of limitations grounds.

### B. MTCA

The Defendants argue that Ward's negligence claim must be dismissed because the MTCA grants immunity to the Defendants as public employees acting within the scope of their employment. D. 8 at 8. Ward replies that even if the Defendants are immune, the NCSOCC should be liable for "clear violations of Article III of the IAD, as well as both state and federal statutes and constitutional law." D. 10 at 12.

The MTCA provides in relevant part that no "public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . . ." Mass. Gen. L. c. 258, § 2. The proper defendant in negligence actions is the public employer, in this case the Norfolk Sheriff's Office or the NCSOCC, but neither is named as a party. Id. (stating that "[p]ublic employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances").

7

Ward acknowledges that all the Defendants were employed by the Norfolk County Sheriff's Office. D. 4-1 ¶ 2. "[A] public employee is immune from a claim arising out of gross negligence because such a claim qualifies as a negligent or wrongful act or omission under § 2." Rua v. Glodis, No. 10-40251-FDS, 2012 WL 4753279, at *5 (D. Mass. Oct. 3, 2012) (quoting Monahan v. Town of Methuen, 408 Mass. 381, 392 (1990) (internal quotation marks omitted)). Employees of the Norfolk Sheriff's Office are public employees for purposes of the MTCA. Id. (noting that Mass. Gen. L. c. 34B, §§ 12 and 13 dictate that both the sheriff and the employees of the sheriff of an abolished county are public employees of the Commonwealth).[2] Because the Defendants named here are immune from negligence claims, the Court concludes that Count I of Ward's complaint must be dismissed.

The MTCA, however, is inapplicable to intentional torts. Mass. Gen. L. c. 258, § 10(c). It, therefore, does not shield the Defendants from liability on the remaining tort claims for conspiracy and intentional infliction of emotional distress. Accordingly, the Defendants' motion to dismiss those two claims is denied.

## V. Conclusion

For the foregoing reasons, the Court DENIES the Defendants' motion to dismiss, D. 7, as to Count II (conspiracy), Count III (intentional infliction of emotional distress) and Count IV (violations of 42 U.S.C. § 1983). The Court ALLOWS the Defendants' motion to dismiss, D. 7, as to Count I (negligence).[3]

**So Ordered.**

---

[2] By Chapter 61 of the Acts of 2009, the Massachusetts legislature transferred the sheriff's offices of seven abolished counties, including Norfolk county, to the Commonwealth.

[3] Although Ward's opposition seeks leave to amend, D. 10 at 3, (which in light of this ruling would only apply to Count I), the Court denies any such request as futile as to the application of the MTCA as to this claim against the Defendants.

/s/ Denise J. Casper
United States District Judge